# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| SHASTA DOMONI STALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV317 |
| | ) | |
| DENIS MCDONOUGH, Secretary of the Department of Veterans Affairs, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Shasta Staley (hereinafter "Plaintiff"), brings this employment discrimination action against Denis McDonough,[1] in his official capacity as the Secretary of the Department of Veterans Affairs (hereinafter "Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), codified at 42 U.S.C. §§ 2000e–2000e-17, the Americans for Disabilities Act (hereinafter "ADA"), codified at 42 U.S.C. §§ 12101–12201, 47 U.S.C. §§ 225, 611, and the Rehabilitation Act of 1973 (hereinafter "Rehabilitation Act"), codified at 29 U.S.C. §§ 701–796.[2] (ECF No. 2.) Plaintiff seeks judicial review of a Merit Systems Protection Board decision regarding her claims pursuant to 5 U.S.C. §§ 7702(a)(1), 7703(b)(2). (See id.)

---

[1] Denis McDonough is no longer the Secretary of the Department of Veterans' Affairs; however, no party has moved to change the case caption to reflect the name of the current Secretary. *See, e.g., Hartzman v. Wells Fargo & Co.*, No. 1:14CV808, 2016 WL 6810943, at *2 (M.D.N.C. June 28, 2016) (granting motion to change the name of Defendant upon showing of good cause).

[2] As reflected in this Court's earlier Order, granting in part Defendant's Motion to Dismiss, the Court has construed Plaintiff's claim made pursuant to 29 C.F.R. § 1614.101(b) as a claim made pursuant to the Rehabilitation Act. (ECF No. 29 at 4 n. 1.)

Before the Court is a Motion for Summary Judgement, (ECF No. 44), filed by Defendant.[3] For the reasons stated herein, Defendant's motion will be granted.

## I.   BACKGROUND

Plaintiff was hired as a Veteran Service Representative in 2012 by the Veterans Benefit Administration (hereinafter "the Agency") at the Winston-Salem Regional Office (hereinafter "WSRO"). (ECF No. 2 at 5 ¶ E.1.) The Agency is a bureau of the United States Department of Veterans Affairs. (ECF No. 47-15 at 1.) In 2014, Plaintiff became a Rating Veteran Service Representative (hereinafter "RVSR"). (*Id.* at 5 ¶ E.2.) In 2014, Plaintiff requested, due to her disability, to be permitted to telework four days a week, which was approved by the Agency. (*Id.* at 5 ¶ E.3; *see generally* ECF No. 46-8.) Later, Plaintiff requested other reasonable accommodations from the Agency, including five-day telework. (ECF Nos. 2 at 5 ¶ E.3; 46-9 at 1.)

The Agency's response to Plaintiff's requests was the basis of Plaintiff's informal, and then formal, complaints alleging disability discrimination in September 2018. (ECF Nos. 2 at 5 ¶ E.4; 46-10.) After Plaintiff took these actions, in October 2018, a WRSO manager recommended Plaintiff's removal pursuant to 38 U.S.C. § 714 for failure to meet performance standards. (ECF Nos. 46-12 at 1; 46-11 at 2; 46-14 at 3.) After a stay and review by the Agency's Office of Special Counsel (hereinafter "OSC"), the Director of the WSRO, Mark

---

[3] Upon appeal of the MSPB's final order or decision, the MSPB is "named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent." 5 U.S.C. § 7703(a)(2). Since Plaintiff appeals the MSPB's decision on the merits, the Defendant is the Department of Veterans Affairs rather than the MSPB. *See Jones v. United States Merit Sys. Prot. Bd.*, 103 F.4th 984, 992 n. 3 (4th Cir. 2024).

Bilosz, sustained Plaintiff's removal and it became effective on May 29, 2019. (ECF No. 46-14 at 1, 2.)

On June 21, 2019, Plaintiff applied to the Office of Personnel Management (hereinafter "OPM") for disability retirement benefits. (ECF No. 46-15 at 1, 4.) Plaintiff's application was initially rejected on January 2, 2020. (ECF No. 45-16 at 1.) On February 1, 2020, Plaintiff applied for reconsideration of OPM's decision. (ECF No. 45-17 at 1.) Meanwhile, in July of 2019, Plaintiff and the Agency engaged in arbitration regarding Plaintiff's May 2019 removal. (ECF No. 46-13 at 11.) On March 7, 2020, the arbitrator ordered that the Agency reinstate her and make her whole for lost wages, benefits, and seniority. (*Id.* at 27–28.) Plaintiff was reinstated, and on March 16, 2020, she returned to work at the WSRO as a RVSR. (ECF Nos. 46-18 at 1.) Plaintiff was asked to complete in-person training at the start of her reinstatement, and at that time, Crystal McBane became her direct supervisor. (ECF No. 46-18 at 1, 2.) In the first week of her reinstatement, Plaintiff made several requests of her supervisors, including the immediate use of her paid leave to miss portions of her first three days back at work. (ECF No. 45-8 at 1, 5, 6, 8.)

Also, during Plaintiff's first week of reinstatement, the COVID-19 pandemic worsened. (ECF Nos. 45-1 at 1; 45-2 at 1.) North Carolina enacted a stay-at-home order, and like much of the federal government, the WRSO enacted a five-day telework policy. (ECF Nos. 46-21 at 1, 3; 45-4 at 1.) Plaintiff, and all other employees of the WRSO, were asked to sign telework agreements and begin teleworking five days a week. (ECF Nos. 45-2 at 1; 45-3 at 1, 2.) Plaintiff and one other objected to this mandate, but only Plaintiff continued to object once the stay at home order was enacted. (ECF Nos. 46 ¶ 6; 46-2 at 1; 47-4 at 1.) Plaintiff claimed she could not work from home for lack of space and asked that if she was to be

required to telework, that the WRSO pay for her furniture to be moved and stored and then provide her a workstation for her home. (ECF Nos. 45-7 ¶ 7; 45-12 at 4–5.) Plaintiff claimed that she needed this to be done because she had converted her former office into a "mancave" and no other space in the house would allow her to telework. (ECF Nos. 46-6 at 2; 46-4 ¶ 11.) When offered a desk and internet hotspot, in addition to the two laptops she had already been provided, Plaintiff declined them. (ECF Nos. 45-9 at 2; 46-6 at 6; 47-14 at 2.)

Given her stated requirements for telework, Plaintiff asked that she be allowed to work from the office, and this request was denied. (ECF No. 45-12 at 6.) Plaintiff then asked to be placed on "leave without pay" for three weeks, beginning March 30, 2020; the request was denied in part and Plaintiff was granted "leave without pay" until April 1, 2020. (*Id.* at 1; ECF No. 45-13 at 2.) In the memorandum partially denying Plaintiff's request, her second-line supervisor, Darcy Beatty, explained that the three week request was denied because Plaintiff's previous leave balances were restored on April 1, 2020, therefore, henceforth Plaintiff could only use paid leave when she chose not to telework. (ECF Nos. 46-4 ¶ 9; 46-6 at 6.)

Plaintiff refused to use her paid annual leave, as directed, for her telework absences; instead, she asked to use paid "weather and safety" leave. (ECF No. 46-6 at 5–6.) Plaintiff's supervisor told her that "weather and safety" leave could not be used because her home was a "safe haven" during the pandemic, and accordingly, regulations did not allow "weather and safety" leave to be used when teleworking was available to her. (ECF No. 46-4 ¶ 9.) Plaintiff again asked for "leave without pay," to run through May 7, 2020; however, Darcy Beatty denied her request and reiterated that this was not permissible under the Agency's policy and applicable federal regulations. (ECF No. 46-6 at 4, 6, 7.) Despite the denials of her "leave without pay" and "weather and safety leave" requests, Plaintiff refused to appear for work.

4

(ECF No. 45-17 at 1; 45-18 at 1; 45-19 at 1; 45-20 at 1; 45-21 at 1.) On April 21, 2020, Plaintiff was recommended for removal.[4] (ECF No. 47-1 at 1.)

On May 15, 2020, OPM granted Plaintiff's request for reconsideration of her disability retirement. (ECF No. 47-17 at 1.) Plaintiff's disability retirement was initially backdated to February 2020, when Plaintiff was initially rejected and asked for reconsideration, but was soon dated to reflect May 15, 2020, when she was approved. (*See* ECF No. 47-19 at 32–33, 36.) Meanwhile, Plaintiff's removal was sustained in August 2020 but was dated as effective on May 15, 2020. (ECF No. 47-4 at 1, 4.) On August 25, 2020, Plaintiff filed an Equal Employment Opportunity (hereinafter "EEO") complaint alleging retaliatory removal and denial of paid leave based on protected activity related to her disability. (ECF No. 47-7 at 1.)

Following the EEO investigation and final decision in favor of the Agency, Plaintiff appealed to the Merit Systems Protection Board (hereinafter "MSPB"). (ECF Nos. 47-14 at 3; *see generally* ECF No. 47-15.) While before the MSPB, the assigned administrative law judge (hereinafter "the Board"), decided *sua sponte* to consider the procedure and propriety of Plaintiff's removal according to Agency policy. (ECF No. 2-1 at 3.) After the Board suggested to the parties that there appeared to be deficiencies with Plaintiff's removal, the Agency rescinded Plaintiff's removal. (*Id.*) Following that rescission, the Board considered whether the rescission mooted issues related to the procedure and propriety of Plaintiff's removal. (*Id.*) Plaintiff then claimed that her disability retirement was involuntary and wished to be heard by the Board. (*Id.* at 4–5.) Ultimately, the Board dismissed both claims and only made findings on the merits of Plaintiff's discrimination claims. (*Id.* at 3, 5.)

---

[4] Plaintiff was recommended for removal after fourteen days of unauthorized absence from work, fourteen related instances of failure to follow proper procedure for requesting leave, and three instances of failing to follow her supervisor's instructions. (*See* ECF No. 47-1 at 1, 2, 2–3.)

5

Following the Board's decision, Plaintiff sought the judicial review of this Court. (ECF No. 2 at 3.) Plaintiff seeks review of the Board's findings related to both her discrimination and non-discrimination claims. (*Id.*) On August 7, 2023, this Court considered and granted in part Defendant's Motion to Dismiss. (ECF No. 29 at 13.) Following the close of discovery, Plaintiff, who previously proceeded in this action *pro se*, retained counsel to represent her in this matter. (ECF No. 39 at 1; *see also* ECF Nos. 2; 29 at 1.) Then, on July 22, 2024, Defendant filed its Motion for Summary Judgment on all Plaintiff's claims. (ECF No. 44 at 1–2.)

## II.  INITIAL MATTERS RELATED TO PLAINTIFF'S CLAIMS

### A.  Plaintiff's ADA Claim was Dismissed by This Court's Order and Cannot be Revived at Summary Judgment

As reflected in this Court's earlier Order on Defendant's Motion to Dismiss, Defendant argued that one of Plaintiff's initial claims, discrimination under the ADA, was improper because the ADA cannot be used to support claims made against the United States. (ECF No. 29 at 4.) In briefings for the Motion to Dismiss, Plaintiff acknowledged this to be true and voluntarily withdrew her claim under the ADA. (*Id.*) Consequently, the Court dismissed Plaintiff's ADA claim. (*Id.*)

Plaintiff now argues in her Response in Opposition to Defendant's Motion for Summary Judgment (hereinafter "Response") that she "has also established a prima facie case of discrimination under the [ADA]." (ECF No. 51 at 29.) Defendant argues in its Reply Brief in Support of its Motion for Summary Judgment (hereinafter "Reply") that this Court should disregard Plaintiff's ADA arguments, supporting their argument by reference to this Court's earlier Order on its Motion to Dismiss. (ECF No. 56 at 12.) Given that Plaintiff's ADA claim was dismissed by this Court's earlier Order, and Plaintiff has not asserted grounds for reviving this claim at this stage in the litigation, nor could she, Plaintiff cannot revive this claim at

6

summary judgment. (*See generally* ECF No. 51); *see also Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."). Accordingly, Plaintiff's arguments related to her discrimination claim under the ADA in her Response will be disregarded in the resolution of the instant motion.

### B. Plaintiff Cannot Raise a Claim of Disability Discrimination Under the Rehabilitation Act

For the first time, Plaintiff also argues in her Response that "Defendant's actions in denying [Plaintiff's] accommodation and allowing non-disabled employees to return to the workplace demonstrate a clear failure to comply with the requirements of the Rehabilitation Act."[5] (ECF No. 51 at 12.) Plaintiff then outlines relevant standards for a claim for disability discrimination under the Rehabilitation Act and proceeds to argue why she meets those standards. (*Id.* at 10–12.) Throughout this discussion, Plaintiff makes no reference to her retaliation claim under the Rehabilitation Act. (*Compare id.* at 10–12 *with id.* at 12–13, 16–18.)

Defendant's Reply construes some of Plaintiff's arguments as a discussion of direct evidence of retaliatory animus in support of her retaliation claim. (ECF No. 56 at 2–5.) To the extent Plaintiff's arguments are probative of direct evidence of retaliation against her, they will be considered by this Court. However, to the extent that Plaintiff intended to bring a claim of disability discrimination, this is improper and will not be permitted. Plaintiff has never before made a claim of disability discrimination to the Equal Employment Opportunity Commission, the MSPB, or this Court. (*See* ECF Nos. 47-14 at 1; 47-15 at 3; 29 at 1.) Plaintiff

---

[5] Plaintiff also attempts to argue the merits of her 2018 disability discrimination complaints before this Court, which is also improper. *Hurst v. D.C.*, 681 F. App'x 186, 194 (4th Cir. 2017) (noting that "a plaintiff may not amend her complaint via briefing") (citations omitted). Plaintiff's arguments about the merits of her 2018 disability discrimination will not be considered by this Court in resolution of the instant motion.

7

was required to exhaust her administrative remedies for such a claim before instituting a lawsuit on those grounds. *See Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 593 (4th Cir. 2012). Accordingly, such a claim and arguments in support thereof are not properly before this Court and will be disregarded. *Walton v. Harker*, 33 F.4th 165, 174–75 (4th Cir. 2022) (citations omitted); *see also Hurst v. D.C.*, 681 F. App'x 186, 194 (4th Cir. 2017) (citations omitted).

### C.    Plaintiff Abandoned her Claims of Discrimination and Retaliation Under Title VII

Defendant argues that it is entitled to summary judgment on Plaintiff's Title VII claim "because her Complaint does not contain a claim of discrimination based on [Title VII's protected categories], and because [Plaintiff] cannot point to any evidence of discrimination or retaliation based on a category protected under Title VII." (ECF No. 45 at 12.) Plaintiff's Response makes no reference or arguments related to Title VII at all. (*See generally* ECF No. 51.) Thus, Defendant argues in its Reply that it should be granted summary judgment on Plaintiff's Title VII claims on abandonment grounds. (*See* ECF No. 56 at 11 (citations omitted).)

A plaintiff's failure to respond to a defendant's argument regarding one of its claims in a motion for summary judgment, is in effect, plaintiff's abandonment of said claim. *See* Fed. R. Civ. P. 56(e)(3); *cf. Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop [its] argument'—even if [its] brief takes a passing shot at the issue.") (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015) (internal citation and quotation marks omitted)) (alterations in original). Following a plaintiff's failure to respond to a claim, a defendant may also move for summary judgment on the basis of that abandonment. *Stanley v. Wentworth Voluntary Fire Dep't, Inc.*, No. 1:10CV380, 2011 WL 3665009, at *9 (M.D.N.C. Aug. 17, 2011)

8

(collecting cases). This Court finds that Plaintiff did abandon her Title VII claim by failing to make any arguments related to discrimination or retaliation under Title VII in her Response. (*See generally* ECF No. 51.) Further, Defendant has properly moved for summary judgment on the grounds of Plaintiff's abandonment of her Title VII claims. (ECF No. 56 at 11.) Accordingly, this Court finds that Plaintiff's Title VII claims have been abandoned, and Defendant is, therefore, entitled to summary judgment on Plaintiff's Title VII claims.

## III. PLAINTIFF'S REMAINING CLAIMS

The Civil Service Reform Act (hereinafter "the CSRA"), 5 U.S.C. § 1101 *et seq.*, governs the judicial review of decisions made by the MSPB. *Kloeckner v. Solis*, 568 U.S. 41, 45 (2012) (citing 5 U.S.C. § 7703). The CSRA grants federal employees the opportunity to administratively appeal some adverse employment decisions to the MSPB. 5 U.S.C. § 7512. The jurisdiction of the MSPB includes, primarily, the administrative appellate review of adverse actions that are the basis of merit-principle non-discrimination claims. *See* 5 U.S.C. § 7702(a)(1)(A). However, in "mixed cases," the MSPB is also permitted to review a federal employee's associated discrimination claims. 5 U.S.C. §§ 7702(a)(1)(B), 7703(b)(2). The CSRA also allows employees to seek the judicial review of the final order or decision of the MSPB. 5 U.S.C. § 7703(b)(2); *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 426 (2017) (citation omitted). In a "mixed case" a District Court may review the decision of the MSPB. 5 U.S.C. § 7703(b)(2); *Perry*, 582 U.S. at 426 (citation omitted).

The portions of an MSPB decision that makes findings on an employee's discrimination claims in a "mixed case" are reviewed by the District Court *de novo. See* 5 U.S.C. § 7703(c). Accordingly, this Court first reviews *de novo* Plaintiff's remaining discrimination claims related to the Rehabilitation Act: (1) Plaintiff was retaliated against for engaging in

protected activity related to her disability after her reinstatement; and (2) Plaintiff was subjected to a hostile work environment after her reinstatement.

The portions of the MSPB's findings that relate to Plaintiff's non-discrimination claims are subject to a more deferential review by this Court. 5 U.S.C. § 7703(c)(1)–(3). This Court will therefore apply a deferential standard of review on the following claims that were decided by the MSPB: (1) the procedure and propriety of Plaintiff's removal by the VA; and (2) whether Plaintiff was constructively removed due to being placed involuntarily on disability retirement.

    1.    <u>Standard of Review for Summary Judgment</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (internal citations and quotations omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an

absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

Defendant seeks summary judgment on all Plaintiff's claims "because [Plaintiff] cannot present sufficient evidence to create a genuine dispute of material fact as to whether the adverse employment actions taken against [her] in April and May 2020 were retaliatory or whether she was subjected to a hostile work environment." (ECF No. 44 at 1–2.) Plaintiff argues in response that she has presented sufficient evidence to raise genuine issues of material fact on all her claims. (ECF No. 51 at 3.)

2.  <u>Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's Retaliation Claim Under the Rehabilitation Act</u>

Defendant asks this Court to grant summary judgment on Plaintiff's retaliation claim because Plaintiff "cannot present direct or circumstantial evidence that her May 2020 removal, the denial of Weather and Safety Leave, or being marked AWOL was motivated by retaliation." (ECF No. 45 at 17.) Plaintiff argues that Defendant's adverse actions against her are "pretextual and retaliatory in nature." (ECF No. 51 at 12.) Plaintiff further argues that because she "had previously filed complaints regarding disability discrimination, and the same

11

supervisors who had wrongfully terminated her before were involved in [the instant] adverse actions . . . [these facts] suggest[] a retaliatory motive."  (*Id.*)

The Rehabilitation Act declares that: "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under . . . any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).  "[T]o prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method."[6] *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) (quoting *Jacobs*, 780 F.3d at 577 (internal citation and quotation marks omitted)).

For direct evidence of discrimination, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged [retaliatory animus] and that bear directly on the contested employment decision." *Bandy v. City of Salem, Va.*, 59 F.4th 705, 711 (4th Cir. 2023) (citation omitted).  When relying on indirect evidence, a Plaintiff proceeds under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), thus, a plaintiff must first prove a prima facie case by a preponderance of the evidence. *Abilt v. Cent. Intell. Agency*, 848 F.3d 305, 315 (4th Cir. 2017) (citation omitted).  Then, if she succeeds, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions." *Id.* (citation omitted).  "Finally, once the defendant proffers its justification for the action, the burden shifts back to the plaintiff to 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.'" *Id.*

_____

[6] Although it is not clear from her briefing, Plaintiff appears to make arguments regarding both direct and indirect evidence of discriminatory intent.  (*See* ECF No. 51 at 13.)

(quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804)).

a.  Plaintiff has established a prima facie case of retaliation

To make a prima facie case for a retaliation claim under the Rehabilitation Act, Plaintiff must "show that [s]he engaged in protected activity, that [s]he was subject to an adverse employment action, and that there is a causal link between the two." *Abilt*, 848 F.3d at 315 n. 9 (citing *Laing v. Fed. Express Corp.*, 703 F.3d 713, 720 (4th Cir. 2012)).

The parties do not dispute that an adverse employment action was taken against Plaintiff. *See Jacobs*, 780 F.3d at 577 (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001)); (ECF Nos. 45 at 17; *see* 51 at 12–13, 16.)  It is also not in dispute that Plaintiff engaged in protected activity, but there is some disparity between the parties about what Plaintiff's protected activity is.  (*Compare* ECF Nos. 45 at 17 *with* 51 at 12–13, 16.)  However, both parties agree, and there is only record evidence to support, that Plaintiff's protected activity is comprised of her 2018 complaints related to disability accommodations and discrimination, which led to her eventual 2020 reinstatement.  (*Compare* ECF Nos. 45 at 3 *with* 51 at 13.)

To assess causation, the Court considers Plaintiff's direct and indirect evidence of retaliation.  *See Jacobs*, 780 F.3d at 577 (quoting *Rhoads*, 257 F.3d at 391).  Although this Court construes the facts in light of Plaintiff, Plaintiff has cited no record evidence, not even a sworn declaration by her, to maintain her argument that there is direct evidence to support a finding of causation.  While Plaintiff argues that there is evidence of direct discrimination because Plaintiff requested disability-related telework accommodations in 2020, there is no record evidence that this occurred.  The record instead reflects that, to justify her requests in response to the telework order, Plaintiff only represented that there was not enough space or sufficient

13

internet connection in her home for her to telework. (ECF Nos. 45-7 ¶ 7; 45-12 at 4–5; 46-4 ¶ 11; 46-6 at 2.) The record does not reflect that Plaintiff stated these requests were based on her disability.

As for indirect evidence of causation, in examining the record, the Court finds the tenor of the communications between Plaintiff and her supervisors could allow a juror to infer a causal link between retaliatory animus against Plaintiff and her removal. (*See generally* ECF Nos. 46-3; 46-5; 46-6; 46-7.) Emails from Plaintiff's supervisors in response to her work-related requests and questions could be reasonably read as tense, with some appearing to reflect open frustration and annoyance. (*See generally* ECF Nos. 46-5; 46-6; 46-7.) Other emails, from the persons her direct supervisors sought advice from regarding Plaintiff's requests, including OSC attorneys, could be reasonably read as short-tempered or rude, and importantly, some of that emotion was directly conveyed to Plaintiff via email. (*See generally* ECF Nos. 46-3; 46-5; 46-6; 46-7.) Moreover, given that her termination was recommended less than two months after her reinstatement, the temporal proximity alone is sufficient to establish a disputed issue of fact related to causation. *Jacobs*, 780 F.3d at 579 (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001)).

Nonetheless, the centerpiece of the parties' disagreement is whether, some of Plaintiff's supervisors were aware of her earlier protected activity, and whether her direct supervisor acted with that knowledge in taking an adverse employment action against her. (ECF Nos. 45 at 17; 51 at 27); *see also Jacobs*, 780 F.3d at 578. Defendant argues that there are no material facts to support causation because Plaintiff's direct supervisor, Crystal McBane, was not aware of Plaintiff's 2018 protected activity. (*See* ECF No. 45 at 17.) Plaintiff responds by arguing that her former supervisors in 2018, including Kimberly Schillhammer, who was her third-line

14

supervisor in 2020, and Mark Bilosz, who was the Director of the WRSO in 2020, were aware of her 2018 protected activity. (ECF Nos. 45-5 at 61; 51 at 6 ¶¶ 20–21.)

The record also reflects that during Plaintiff's 2020 employment, Kimberly Schillhammer and Crystal McBane were in regular contact with each other about Plaintiff's conduct, job performance, requests, and other email communications. (*See generally* ECF No. 46-3.) This evidence is sufficient to support an inference of causation in Plaintiff's favor on a retaliation claim. *Rhoads,* 257 F.3d at 391–92 (citation omitted); *accord Jacobs*, 780 F.3d at 577–78 (citing *Rhoads,* 257 F.3d at 391, 391–92 (internal citations omitted)). Further, there is record evidence of both Kimberly Schillhammer and Crystal McBane consulting with each other and OSC attorneys about how to respond to Plaintiff's work-related requests and questions, which a reasonable jury could conclude was done in part because of Plaintiff's previous formal complaints. (*See generally* ECF No. 46-3.) Such evidence smacks of what the Fourth Circuit has suggested may be relevant for an inference of certain retaliatory animus for Plaintiff. *Rhoads,* 257 F.3d at 391–92 (citation omitted); *accord Jacobs*, 780 F.3d at 577–78 (citing *Rhoads,* 257 F.3d at 391, 391–92 (internal citations omitted)).

Therefore, when construing the facts in Plaintiff's favor, the Court finds there is sufficient evidence from which a reasonable jury can conclude that Plaintiff has established a prima facie case of retaliation under the Rehabilitation Act by a preponderance of the evidence.

b. Defendant has established legitimate and non-discriminatory reasons for terminating Plaintiff

Regarding a retaliation claim under the Rehabilitation Act, once a prima facie case is made, the burden shifts to the Defendants to show a legitimate, nondiscriminatory reason for their action. *Abilt*, 848 F.3d at 315 (citation omitted). First, Defendant states that Plaintiff was marked as "absent without leave" from work, not for discriminatory reasons, but because

15

she, along with all telework eligible employees from the WSRO, was given a directive to telework, and Plaintiff was the only employee who did not comply with this order. (ECF No. 45 at 18.) Second, Defendant argues Plaintiff was denied "weather and safety" leave because her reason for requesting this leave, instead of teleworking, was that there was inadequate space in her home, which was not related to weather or safety. (*Id.*)

The Fourth Circuit has found that the Defendant's burden of proof on this element is "relatively modest." *Jacobs*, 780 F.3d at 575. Further, the Fourth Circuit has made clear that "the Rehabilitation Act 'does not require an employer to simply ignore an employee's blatant and persistent misconduct, even where that behavior is potentially tied to a medical condition.'" *See Hannah P. v. Coats*, 916 F.3d 327, 344 (citing *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016); *Maritson v. Kinney Shoe Corp.,* 104 F.2d 683, 686 n. 3 (4th Cir. 1997)). Employers are also permitted to take a disabled plaintiff's attendance and misconduct into account when making an employment decision, even if plaintiff's attendance or misconduct was caused by their disability. *Maritson,* 104 F.2d at 686 n. 3; *see also Coats*, 916 F.3d at 344.

This Court finds Defendant has made a sufficient and consistent showing of Plaintiff's misconduct when she returned to the Agency. (*See* ECF Nos. 45-2; 45-3, 45-4.) Plaintiff began working again at the VA on Monday, March 16, 2020, and her last documented day of work was Friday, March 27, 2020. (ECF Nos. 46-18 at 1; 45-12 at 1.) During this period, Plaintiff was mostly absent without leave until her removal was recommended on April 21, 2020. (ECF Nos. 45-17 at 1; 45-18 at 1; 45-19 at 1; 45-20 at 1; 45-21 at 1.) Plaintiff's direct supervisor, Crystal McBane, repeatedly sent Plaintiff memos documenting Plaintiff's unexcused absences and improper leave requests. (ECF Nos. 45-17 at 1; 45-18 at 1; 45-19 at

16

1; 45-20 at 1; 45-21 at 1.)  In her Response, Plaintiff argues that her alleged misconduct was directly related to her disability and therefore cannot be legitimate or nondiscriminatory reasons for her removal.  (ECF No. 51 at 12–13.)  Putting to one side that Plaintiff has cited no evidence that her misconduct was related to her disability, as set forth above, attendance and misconduct can be considered in employment decisions even when those infractions are caused by an employee's disability.  *Maritson,* 104 F.2d at 686 n. 3; *see also Coats,* 916 F.3d at 344.

Given the foregoing, this Court concludes that Defendant has met its burden of proof in establishing legitimate and non-discriminatory reasons for terminating Plaintiff.

### c.     Plaintiff has failed to establish that Defendant's proffered reasons for Plaintiff's termination were pretext for retaliation

Following Defendant's showing of legitimate, nondiscriminatory reasons for removing her, Plaintiff must now rebut Defendant's showing by establishing that its reasons were pretext for retaliation.  *Abilt,* 848 F.3d at 315 (quoting *Burdine,* 450 U.S. at 253 (citing *McDonnell Douglas,* 411 U.S. at 804).  To establish pretext a plaintiff must present evidence that would allow a reasonable juror to conclude that (1) Defendant's proffered legitimate nondiscriminatory reasons are "unworthy of credence" and (2) that unlawful retaliatory animus was the actual motive for Defendant's decision.  *Figueroa v. Geithner,* 711 F. Supp. 2d 562, 573 (D. Md. 2010) (citing *Holland v. Wash. Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007) (quoting *Burdine,* 450 U.S. at 256); *Desmond v. Mukasey,* 530 F.3d 944, 962 (D.C. Cir. 2008) (additional citation omitted)).

To meet her burden to establish pretext, Plaintiff argues that it would not have imposed any undue hardship for Defendant to provide Plaintiff a reasonable accommodation by allowing her to work alone within the building.  (ECF No. 51 at 12.)  Plaintiff further argues, without citing record evidence, that (1) she also requested permission to work remotely from

a union office nearby; (2) Defendant allowed non-disabled employees to return to the workplace; and (3) that Defendant retaliated against her because of her disabilities. (*Id.* at 12, 13.)

The record reflects no evidence to permit an inference that Plaintiff's termination is unworthy of credence or actually motivated by retaliatory animus. *Holland*, 487 F.3d at 218. The Fourth Circuit has found that evidence that can support a finding of pretext includes the consistency of the justifications for Plaintiff's termination, and whether those justifications at litigation were the ones conveyed at Plaintiff's termination. *Cf. Coats*, 916 F.3d at 343; *Equal Emp. Opportunity Comm'n v. Sears Roebuck & Co.,* 243 F.3d 846, 852–53 (4th Cir. 2001). Here, Plaintiff was repeatedly told both formally and informally that while the stay at home order was in effect she could not use "weather and safety leave" or "leave without pay" on the days that she could, but just chose not to, telework. (ECF No. 46-4 ¶ 9.) Department policy, which was communicated to Plaintiff, only permitted her to use paid "annual leave," which Plaintiff refused to use. (*Id.*; ECF No. 46-6 at 5–6, 6.) Then, in response to her repeated choice not to telework, Plaintiff was sent memos to show her she was being marked as absent without leave. (ECF Nos. 45-17 at 1; 45-18 at 1; 45-19 at 1; 45-20 at 1; 45-21 at 1.) Further, Plaintiff was on notice that her continued unexcused absence from work would result in her termination. (ECF Nos. 45-17 at 2; 45-18 at 2; 45-19 at 2; 45-20 at 2; 45-21 at 2.)

Therefore, this Court finds that there is no evidence to support Plaintiff's assertion that Defendant's proffered legitimate nondiscriminatory reasons are "unworthy of credence" and that unlawful retaliatory animus was the actual motive for Defendant's decision. *See Holland*, 487 F.3d at 218. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim under the Rehabilitation Act.

18

3.  Defendant is Entitled to Judgment as a Matter of Law on Plaintiff's Rehabilitation Act Claim of Hostile Work Environment

As for Plaintiff's hostile work environment claim under the Rehabilitation Act, Defendants argue they are entitled to summary judgment because even assuming Plaintiff's allegations of harassment provided a basis to hold the Agency liable, Plaintiff cannot prove her alleged harassment was in retaliation for protected conduct and cannot prove it was "sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere." (ECF No. 45 at 22.) Plaintiff argues in response that "the record contains ample evidence that raises genuine issues of material fact as to whether Defendant harassed and retaliated against [Plaintiff] because of her disabilities." (ECF No. 51 at 13.) Plaintiff further argues that "[t]he agency's persistent failure to accommodate [Plaintiff's] disabilities, combined with retaliatory actions taken after she engaged in protected activity, amounts to harassment and retaliation prohibited by the Rehabilitation Act." (*Id.*)

"In order to establish a hostile work environment claim, a claimant must demonstrate that the alleged conduct: 1) was unwelcome; 2) resulted because of her gender, disability, or prior protected activity; 3) was 'sufficiently severe or pervasive' to alter the conditions of her employment; and 4) was imputable to her employer." *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009) (citation omitted). "While the first element is subjective, the rest of the test is made up of objective components based on a "reasonable person" standard. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Further, "rude treatment from coworkers, callous behavior by one's supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable," and "[i]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard" of a hostile work environment claim. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019)

19

(quoting *Equal Emp. Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)); *see also Katz v. U.S. Dep't of Just.*, No. 1:20-CV-554, 2021 WL 3809034, at *8 (E.D. Va. Aug. 26, 2021) (citing *Evans*, 936 F.3d at 192) (analyzing a hostile work environment Rehabilitation Act claim).

Even assuming *arguendo*, that Plaintiff can meet the first, second, and fourth elements of a hostile work environment claim, the third—that the alleged conduct "was 'sufficiently severe or pervasive' to alter the conditions of her employment"—cannot be met. *Pueschel*, 577 F.3d at 565. For the third element of a hostile work environment claim, the alleged harassment rises to the level of being "sufficiently severe or pervasive," such that it "alter[s] the terms or conditions of the employment of a workplace," when the conduct makes the work atmosphere "permeated with discriminatory intimidation, ridicule, and insult." *Pueschel*, 577 F.3d at 565 (quoting *Harris,* 510 U.S. at 21) (additional citations omitted).

Plaintiff's allegations of hostile work environment conduct include that her supervisor did not clearly communicate when she would complete her training, that she did not have a desirable temporary workstation in the WRSO training room, that she received a phone call from her supervisor when it was not clear if Plaintiff would be requesting leave from work during her first week of reinstatement, that she would be asked to meet performance standards after completing training, and that her direct supervisor left the room before speaking to her during a training session. (ECF No. 47-18 at 7–9; *see also* ECF Nos. 45-8 at 5; 45-14 at 1.) A reasonable juror cannot conclude, based on this evidence, that Plaintiff was subjected to severe or pervasive conduct that altered the conditions of her employment. *Pueschel*, 577 F.3d at 565 (quoting *Harris,* 510 U.S. at 21) (internal citations omitted).

20

Accordingly, Defendant has shown that there is no genuine issue of material fact on Plaintiff's hostile work environment claim, and therefore, Defendant is entitled to judgment as a matter of law on this claim.

### 4. The Board Did Not Commit Reversible Error in Resolving Plaintiff's Non-Discrimination Claims

As mentioned above, Plaintiff's claims are part of a "mixed case," therefore, this Court's review of Plaintiff's non-discrimination claims reviewed by the MSPB is limited to the MSPB's administrative record and is also subject to a deferential review. 5 U.S.C. § 7703(c).[7] This Court "may only set aside [the MSPB's] actions, findings, or conclusions of law if they are '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" 5 U.S.C. § 7703(c); *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 266 (4th Cir. 2001) (citing 5 U.S.C. § 7703(c)).

Plaintiff's non-Rehabilitation Act claims as decided by the Board were: (1) any issue with the procedure and propriety of Plaintiff's removal by the VA was mooted by the rescission of her removal; and (2) Plaintiff claim that she was constructively removed due to her placement on disability retirement was frivolous and untimely. (ECF No. 2-1 at 3–5.) Defendant argues Plaintiff cannot show reversible error in the Board's decision regarding her

---

[7] This Court's review of MSPB decisions is limited to those that are "a final order or decision of the Merit Systems Protection Board." 5 U.S.C. § 7703(a)(1); *see also Jones*, 103 F.4th 984, 992 (4th Cir. 2024) (quoting 5 U.S.C. §§ 7703(a)(1)) (internal quotation marks omitted). A final decision "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (citation omitted); *see also id.* (internal citation omitted). "[T]he central concern of the final judgment rule [is] that piecemeal review of decisions that are but steps toward final judgments on the merits are to be avoided, because they can be effectively and more efficiently reviewed together in one appeal from the final judgments." *James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993). A MSPB decision becomes final after 35 days. 5 C.F.R. § 1201.113.

non-discrimination claims. (ECF No. 44 at 2.) In response, Plaintiff argues, without citing supporting law, that the Board's decision should be "overturn[ed]" because her claims were timely and not mooted by the rescission of her removal. (ECF No. 51 at 18, 20–21, 23–26.)

On Plaintiff's first non-Rehabilitation Act claim—the procedure and propriety of Plaintiff's removal by the VA—the Board made the following findings of facts and conclusions of law: First, the Board reiterated its findings from a status conference on November 15, 2021, where the Board informed the parties that it has found deficiencies in its removal of Plaintiff based on applicable precedent from the Federal Circuit. (ECF No. 2-1 at 3 (citing *Connor v. Dep't of Veterans Affs.*, 8 F.4th 1319 (Fed. Cir. 2021); *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290 (Fed. Cir. 2021)).) Following the Board's pronouncement, on November 18, 2021, Plaintiff's removal was rescinded and the agency represented to the Board that Plaintiff was receiving disability retirement benefits. (ECF No. 2-1 at 3.) Second, the Board held, relying on case law, that when an agency unilaterally modifies its personnel action after an appeal, the proceeding is mooted if the agency's action has caused plaintiff to obtain all of the relief available from a successful appeal. (*Id.* (citing *Gillespie v. Dep't of Defense*, 90 M.S.P.R. 327 ¶ 7 (2001); *Pickens v. Dep't of the Army,* 89 M.S.P.R. 568 ¶ 5 (2001)).) The Board's decision pointed to the Agency's showing that there is no mention of Plaintiff's removal in her personnel file, only a letter from the Director of the WRSO reflecting Plaintiff's disability retirement. (*Id.* at 4 (citations omitted)). Third, the Board held that because the agency had fully rescinded Plaintiff's removal, in accordance with case law, any claims regarding the procedure and propriety of her removal was mooted. (*See id.* (citing *Cooper v. Dep't of the Navy*, 108 F.3d 324, 326 (Fed. Cir. 1997) (additional citation omitted).)

This Court first reiterates that Plaintiff did not make a claim about the procedure and propriety of her removal according to law and applicable regulations in her original complaint to the EEO. (ECF No. 47-7 at 1.) The Board *sua sponte* found deficiencies in Plaintiff's removal and notified the parties of such, which provided Plaintiff additional procedural protections and review of the agency's decision. (ECF No. 2-1 at 3.) The Court further finds that the record supports the Board's other factual findings related to this claim, including that Plaintiff's removal has been fully rescinded by the Agency. (ECF No. 23-1 ¶¶ 3–4; *compare* ECF No. 47-16 *with* ECF No. 23-2.) Further, this Court finds that relevant law, that of the Federal Circuit,[8] supports the Board's decision that Plaintiff's claim to challenge the procedure and propriety of her removal was mooted once she was removed. *Jenkins v. Merit Sys. Prot. Bd.*, 911 F.3d 1370, 1373 (Fed. Cir. 2019) (citing *Cooper*, 108 F.3d at 326) (additional citations omitted); *see also Kagel v. Dep't of Army*, 126 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Cooper*, 108 F.3d at 326; *Bruning v. Veterans Admin.*, 834 F.2d 1019, 1021 (Fed. Cir. 1987)); *Ogburn v. Merit Sys. Prot. Bd.*, 750 F. App'x 990, 992 (Fed. Cir. 2018) (citations omitted). Finally, the Court finds that Plaintiff has raised no argument sufficiently supported by law or evidence to suggest that the Board's procedure, findings, or conclusions of law were improper. (ECF No. 51 at 20–21, 23–26.) Nor does Plaintiff argue that the Board or this Court could provide additional, effectual relief for Plaintiff related to the procedure and propriety of her removal. (*Id.*) Accordingly, this Court finds no basis to set aside the Board's actions, findings, or conclusions of law on this claim. *See* 5 U.S.C. § 7703(c).

---

[8] The MSPB's immediate court of appellate review is the U.S. Court of Appeals for the Federal Circuit. *See* 5 U.S.C. 7703(b)(1)(A). Accordingly, the appellate review of decisions made by administrative judges in the MSPB for non-mixed cases, which only discuss the merit removal of a federal employee, are appealed to the U.S. Court of Appeals for the Federal Circuit. *Id.*

On Plaintiff's second non-Rehabilitation Act claim—whether Plaintiff was constructively removed due to being placed involuntarily on disability retirement—the Board made the following findings of facts and conclusions of law: First, the Board found that the first time that Plaintiff raised a claim of constructive discharge was in a pleading to the Board on January 19, 2022. (ECF No. 2-1 at 4.) At that time, Plaintiff asked for an opportunity to brief the issue of whether she could amend her appeal to bring a constructive discharge claim, which the Board granted both parties. (*Id.* at 4–5.) Second, following the briefing, the Board found Plaintiff's claim to be frivolous because "[t]here [was] no evidence that her [disability retirement] application was not voluntarily filed." (*Id.* at 5.) Third, the Board further found that the constructive discharge claim was untimely because to preserve this claim, she needed to raise this claim either directly with the Board within ten days of her notification of removal or through the EEOC process. (*Id.*) Fourth, the Board found Plaintiff's claim was untimely because she "failed to prove that she was diligent in pursuing her right to file this claim to justify a waiver of the filing deadline." (*Id.* (citing *Brown v. U.S. Postal Serv.*, 115 M.S.P.R. 609, ¶ 5 (2013); *Arrington v. Dep't of the Navy*, 117 M.S.P.R. 301, ¶ 15 (2012); *Porter v. Dep't of Def.*, 98 M.S.P.R. 461, ¶ 17 (2005)).)

As earlier found by this Court, Plaintiff was approved for disability retirement on May 15, 2020. (ECF No. 47-17 at 1.) On August 25, 2020, when Plaintiff filed her original EEO Complaint, Plaintiff made no claim that she was constructively removed due to being placed involuntarily on disability retirement. (ECF No. 47-7 at 1.) Further, when Plaintiff later amended her EEO Complaint, she made no claims related to constructive discharge. (ECF No. 47-8 at 1, 1–2.) Nor did Plaintiff make this claim when she initially filed her appeal to the Board on October 8, 2021. (ECF No. 47-15 at 3.) Yet, the Board granted Plaintiff an

opportunity to make her case on both the substance of her constructive discharge claim and make showings as to why the timeliness of her claim should be waived. (ECF No. 2-1 at 4–5.) It was only after this showing that the Board rejected Plaintiff's claims. (*Id.* at 5.) The Court further concludes that the Board's factual findings related to this claim are supported by record evidence. (ECF Nos. 47-7 at 1; 47-14 at 2; 47-15 at 3.) In addition, the Board's conclusions of law are supported by applicable case law. *See Carpenter v. Merit Sys. Prot. Bd.*, 111 F.3d 118, 119–20 (Fed. Cir. 1997); *see also Mueller v. U.S. Postal Serv.*, 76 F.3d 1198, 1201 (Fed. Cir. 1996) (citations omitted). Finally, the Court holds that Plaintiff has raised no argument supported by law or evidence to suggest that the Board's procedure, findings, or conclusions of law were improper in relation to her, the merits, or timeliness of her constructive discharge claim. (ECF No. 51 at 21–22, 24–25.) Accordingly, this Court finds no basis to set aside the Board's actions, findings, or conclusions of law on this claim. 5 U.S.C. § 7703(c).

## B. Conclusion

The record is clear that there are no genuine issues of material fact that would allow a reasonable jury to find in favor of Plaintiff for any of her discrimination claims. Nor are there grounds under 5 U.S.C. § 7703(c) for this Court to set aside the findings of the Board. This Court, therefore, concludes that Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims. Fed. R. Civ. P. 56(c).

Defendant's motion will be granted.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 44), is **GRANTED** and Plaintiff's claims are hereby **Dismissed**.

This, the 4th day of April 2025.

/s/ Loretta C. Biggs
United States District Judge